**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BRIAN CARTER,** :

       **Plaintiff,** : **Case No. 2:07-cv-1189**

    **v.** : **Judge Holschuh**

**DELAWARE COUNTY BOARD OF** : **Magistrate Judge King**
**COMMISSIONERS, et al.,**

                               :

       **Defendants.**

                                 :

## MEMORANDUM OPINION & ORDER

Plaintiff Brian Carter, a Delaware County Deputy Sheriff, sues Defendants Delaware

County Board of Commissioners ("Board"), Delaware County Sheriff's Office ("DCSO"), the

current and former Delaware County Sheriffs, and nine DCSO current and former employees.[1]

Plaintiff asserts nine claims against Defendants arising from race, color, and national origin

discrimination, as well as retaliation, Plaintiff allegedly suffered in his workplace. This matter is

before the Court on Defendants' partial motion to dismiss Plaintiff's complaint under Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 19). Defendants also

move to dismiss the Board and the DCSO as improper parties, and one of Defendant police

officers for insufficient service of process under Rule 12(b)(5). As explained below, the Court

**GRANTS IN PART** Defendants' partial motion to dismiss.

---

[1] The following Defendants are sued in their official and individual capacities: former
Sheriff Al Myers, Chief Deputy Gill Borchers, Special Duty Coordinator Chrissy Todd, Deputy
Charles Gannon, Lt. Kevin Savage, Sgt. David Buttler, Sgt. Larry Dore, Sgt. Randy Pohl,
Captain Scott Vance, and Sgt. Robert Spring. Sheriff Walter L. Davis, III is sued only in his
official capacity. On October 28, 2008, the Court dismissed Defendant Sgt. Chris Burton from
this case. (Doc. # 24).

## I.    Background[2]

Since September 5, 2000, Plaintiff, an African-American male, has been employed as a

Deputy Sheriff by the DCSO.  (Compl. ¶ 19.)  On February 23, 2006, Plaintiff filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio

Civil Rights Commission ("OCRC") against the DCSO.  (Compl. ¶ 24; Defs.' Partial Mot. to

Dismiss Ex. 1.)  In his charge, Plaintiff alleged race discrimination and retaliation by the DCSO

in response to a discrimination charge he allegedly filed with the with EEOC and OCRC

("Commissions") on July 11, 2005.[3]  (Compl. ¶ 24.)  The February 23, 2006 charge arose from

punishment Plaintiff received from his supervisor for allegedly violating three Standard

Operating Procedures ("SOPs") during a special duty assignment.  According to the charge, on

August 19, 2005, Plaintiff was assigned to follow construction equipment in a sheriff's cruiser.

(Compl. ¶ 20.)  Upon reporting for special duty, Plaintiff alleged, he was asked not to escort the

---

[2] The following factual information is taken from Plaintiff's complaint and is assumed to be true for the purposes of this motion.  See Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974).  The Court will also consider the exhibits attached to Defendants' motion to dismiss and Plaintiff's memorandum in opposition.  (Doc. #s 19, 30).  Courts may consider "'documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'"  Kreamer Sports, Inc. v. Rocky Brands, Inc., 2007 WL 1144865, *5 (S.D. Ohio Apr. 16, 2007) (quoting Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001)).  In this case, Plaintiff refers to his two EEOC and OCRC charges, as well as provisions in the collective bargaining agreement between the DCSO and the Ohio Patrolmen's Benevolent Association, on numerous occasions in his complaint.  (See Compl. ¶¶ 24, 29, 45, 21.)  Furthermore, the charges and the contract are central to Plaintiff's claims.  The Court also has wide discretion to consider documentary evidence submitted by a plaintiff in opposition to a motion to dismiss.  See Wakefield v. Children's Hosp., 2008 WL 3833798, *2 n.5 (S.D. Ohio Aug. 13, 2008) (citing Ohio Nat'l Life Ins. Co. v United States, 922 F.2d 320, 325 (6th Cir. 1990).  Therefore, the Court will consider these exhibits for the purposes of this motion.

[3] Other than to say that he alleged race discrimination under Title VII, and to provide the EEOC charge number, Plaintiff provides no factual detail about the July 11, 2005 charge. (Defs.' Partial Mot. to Dismiss Exs. 1-2.)

equipment, but to flag traffic for the construction company. (Compl. ¶ 20.) After he flagged traffic for hours and was refused water by the construction company, Plaintiff allegedly asked the special duty coordinator for, and was granted, permission to leave. (Compl. ¶ 20.) Four days later, on August 23, 2005, Plaintiff was suspended for three days from regular duty and thirty days from special duty by Sheriff Myers for three SOP violations arising from his leaving the special duty assignment. (Compl. ¶ 21.) That same day, Plaintiff filed a grievance with his union, the Ohio Patrolmen's Benevolent Association ("OPBA"), alleging that his discipline was too severe and without just cause in violation of OBPA's collective bargaining agreement with the Delaware County Sheriff.[4] (Compl. ¶ 22; Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 2.) In response, the DCSO reduced his three day suspension to a written reprimand that would remain in his employee file for a year, but maintained the thirty day special duty assignment suspension. (Compl. ¶ 22.)

Plaintiff alleged in his February 23 charge that he was suspended because of his race, and in retaliation for his July 11, 2005 charge against the DCSO. (Compl. ¶ 24.) According to the charge, the DCSO had no legitimate grounds to suspend Plaintiff because he had been granted permission to leave by the special duty coordinator. (Defs.' Partial Mot. to Dismiss Ex. 1.) Moreover, Plaintiff alleged, he was punished more severely than two of his white colleagues who did not even report for their special duty assignments. (Compl. ¶ 23.) According to Plaintiff, those white Deputy Sheriffs were only suspended from regular duty for one day, and from special duty for thirty days. When his white colleagues grieved the suspensions, Plaintiff

---

[4] According to the grievance form that Plaintiff attached to his response to Defendants' motion to dismiss, Plaintiff filed his grievance with the OPBA on August 29, 2005, not on August 23. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 2.)

alleged, their suspensions were reduced to a written reprimand that, unlike in Plaintiff's case, was immediately removed from their files.  (Compl. ¶ 23.)  On September 12, 2007, the EEOC issued Plaintiff a Notice of Right to Sue.  (Compl. Ex. A.)

On October 7, 2006, Plaintiff filed another charge of discrimination with the Commissions against the DCSO.  (Compl. ¶ 29; Defs.' Partial Mot. to Dismiss Ex. 2.)  Plaintiff again alleged race discrimination and retaliation by the DCSO in response to his two previous charges.  After noting that he is the only black Deputy Sheriff in the patrol division of the DCSO, Plaintiff's charge alleged two instances of discrimination.  (Defs.' Partial Mot. to Dismiss Ex. 2.)  Plaintiff first alleged that on May 6, 2006, without explanation or reason, he was assigned to work less hours at a golf tournament, a special duty assignment he volunteered for.  (Compl. ¶ 25.)  Plaintiff next alleged that on June 30, 2006, he received a message containing a racially derogatory picture in his mail box at home.  (Compl. ¶ 26.)  According to Plaintiff, the message originated as an email message from a deputy sheriff at the DCSO, and was forwarded to numerous supervisors and non-supervisory employees, none of whom reported the email.  (Compl. ¶ 26.)  Plaintiff further alleged that he possessed other racially offensive emails from his colleagues that were sent to supervisors and other DCSO employees.  (Compl. ¶ 28.)  According to Plaintiff, he was assigned less hours and subjected to harassment and a hostile work environment because of his race and in retaliation for his previous charges against the DCSO. On November 8, 2007, the EEOC issued Plaintiff a Notice of Right to Sue.  (Compl. Ex. B.)

Plaintiff filed this suit on November 16, 2007, asserting nine claims: (1) violations of Plaintiff's constitutional rights of free speech, equal protection, due process, and privileges and immunities under 42 U.S.C. § 1983; (2) conspiracy to deprive Plaintiff of his constitutional

rights under 42 U.S.C. § 1985; (3) failure to prevent conspiracy in violation of 42 U.S.C. § 1986; (4) denial of Plaintiff's right to make and enforce contracts in violation of 42 U.S.C. § 1981; (5) race, color, and national origin discrimination in violation of Title VII; (6) race, color, and national origin discrimination, and breach of public policy of the State of Ohio in violation of Ohio's fair employment practices laws; (7) breach of contract; (8) promissory estoppel; and (9) hostile work environment based on race, color, and national origin discrimination in violation of Title VII.

Defendants move to dismiss a number of Plaintiff's claims under Rules 12(b)(1) and 12(b)(6). Defendants argue that Plaintiff's: (1) 42 U.S.C. § 1983, 1985, and 1986 claims (Counts One-Three) are barred by statute of limitations, the §§ 1983 and 1985 claims in part, and the § 1986 claim in its entirety; (2) 42 U.S.C. § 1981 claim (Count Four) is unavailable against Defendants; (3) discrimination and hostile work environment claims (Counts Five, Six, and Nine), to the extent they allege color and national origin discrimination, as well as Plaintiff's breach of contract claim (Count Seven), are barred because he failed to exhaust administrative remedies; (4) promissory estoppel claim (Count Eight) is unavailable against Defendants; (5) Title VII discrimination and hostile work environment claims (Counts Five and Nine) against Defendants in their individual capacities are not cognizable under Title VII; and, (6) allegation of a public policy violation imbedded in Plaintiff's Ohio law discrimination claim (Count Six) is unavailable against Defendants. Defendants also move to dismiss the Board and the DCSO as improper parties, and one of the Defendant police officers—Kevin Savage—for insufficient service of process.

Plaintiff responds that this Court has subject matter jurisdiction over his color and

national origin discrimination claims, as well as his breach of contract and promissory estoppel claims. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 5-8.) Plaintiff also apparently disputes Defendants' argument that he is precluded from asserting Title VII claims against the individual DCSO employee Defendants in their individual and official capacities. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 8-9.) Plaintiff "defers to this Court's judgment" with respect to the rest of Defendants' motion to dismiss. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 1.) The Court will analyze Defendants' entire motion to determine which of Plaintiff's claims, if any, should be dismissed.

## II.    Standards of Review

### A.    Rule 12(b)(1) Standard

Defendants move to dismiss some of Plaintiff's claims for lack of subject matter jurisdiction. Federal courts are not courts of general jurisdiction. They have only the power authorized by Article III of the Constitution and conferred by acts of Congress. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Jurisdiction is a prerequisite to a court ruling on the merits of a case. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869).

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. Such challenges come in two forms: facial challenges and factual challenges. In a facial challenge, a defendant contends that, even accepting the material allegations of the complaint as true and construing them in a light most favorable to the

nonmoving party, the court still lacks subject matter jurisdiction over the claim.  Singleton v. United States, 277 F.3d 864, 870 n.4 (6th Cir. 2002) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction."  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  If the moving party makes a factual attack, when determining whether subject matter jurisdiction exists the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Cameron v. Children's Hosp. Med. Ctr., 131 F.3d 1167, 1170 (6th Cir. 1997) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.  In either case, the burden is on the party asserting jurisdiction to demonstrate that subject matter jurisdiction exists.  See Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

**B.**     **Rule 12(b)(6) Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail.  Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." But the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough. Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). It will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) in the absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint, an insurmountable bar to relief indicates that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

## III.     Discussion

### A.     Statute of Limitations

Defendants argue that Plaintiff's 42 U.S.C. § 1983, 1985, and 1986 claims are barred by statute of limitations, the § 1983 and 1985 claims in part, and the § 1986 claim in its entirety. (Defs.' Partial Mot. to Dismiss 2-5.)  The Court will analyze this argument first with respect to Plaintiff's § 1983 and 1985 claims, and then with respect to his § 1986 claim.

#### 1.     Section 1983 and 1985 Claims

Plaintiff alleges in Count One that Defendants violated 42 U.S.C. § 1983 by acting under the color of Ohio law to deprive him of his constitutional rights to free speech, equal protection, due process, and privileges and immunities.  (Compl. ¶¶ 35-36.)  In Count Two, Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985.  (Compl. ¶ 37-39.)  Defendants respond that both of these claims are barred by statute of limitations insofar as they are based on the disparate and discriminatory discipline Plaintiff allegedly received from Sheriff Myers on August 23, 2005.  (Defs.' Partial Mot. to Dismiss 3-5.) According to Defendants, the alleged August 23, 2005 discipline cannot serve as the basis for a § 1983 or 1985 claim because it occurred more than two years before Plaintiff filed this suit. Plaintiff does not dispute this argument.

"Since no statute of limitations is contained in §§ 1983 and 1985, state law provides the relevant time limitation." Porter v. City of Columbus, 2008 WL 202891, *3 (S.D. Ohio Jan. 22, 2008). In Ohio, a two-year statute of limitations applies to both § 1983 and 1985 claims. Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir. 2003) (citing Browning v. Pendleton, 869 F.2d 989, 990 (6th Cir. 1989)); Savage v. Unknown FBI Agents, 142 F.3d 436, 1998 WL 69318, *1 (6th Cir. Feb. 10, 1998) (citing Harris v. Bd. of Educ. of Columbus, 798 F. Supp. 1331, 1345 (S.D. Ohio 1992)).

Plaintiff filed his complaint on November 16, 2007. The discipline Plaintiff allegedly received from the Sheriff occurred on August 23, 2005, more than two years before Plaintiff filed his complaint. (Compl. ¶ 21.) Therefore, Plaintiff's § 1983 and 1985 claims, to the extent they are predicated on the allegedly discriminatory and disparate discipline Plaintiff received on August 23, 2005, are time-barred. See Banks, 344 F.3d at 553; Savage, 1998 WL 69318 at *1. Because the Court lacks subject matter jurisdiction over time barred claims, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1983 and 1985 claims in part. Plaintiff's § 1983 and 1985 claims remain with respect to the constitutional violations Plaintiff allegedly suffered within the two-year statute of limitations period, between November 16, 2005 and November 16, 2007.

### 2. Section 1986 Claim

Plaintiff asserts in Count Three that Defendants knowingly failed to prevent the conspiracy to deprive Plaintiff of his constitutional rights in violation of 42 U.S.C. § 1986. (Compl. ¶ 40-41.) Defendants respond that Plaintiff's § 1986 claim is barred by statute of limitations because none of the alleged conduct upon which Plaintiff's claim is based occurred

within the one-year limitations period.  Plaintiff does not dispute this contention.  (Defs.' Partial Mot. to Dismiss 3-4.)

A one-year statute of limitations applies to § 1986 claims.  42 U.S.C. § 1986.  Plaintiff's § 1986 claim accrued at the latest when Defendants allegedly knew about but failed to prevent the dissemination of racially derogatory emails on August 29, 2006.  (Compl. ¶ 28.)  Since Plaintiff did not file his complaint until November 16, 2007, more than a year after his claim accrued, Plaintiff's § 1986 claim is time-barred.  See 42 U.S.C. § 1986.  Because the Court lacks subject matter jurisdiction over time-barred claims, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1986 claim.

### B.      Section 1981 Claim

Plaintiff alleges in Count Four that Defendants deprived him of his right to make and enforce contracts in violation of 42 U.S.C. § 1981.  (Compl. ¶¶ 42-43.)  Defendants respond that because Plaintiff sues Defendants as state actors, and alleges that they operated under the color of state law, Plaintiff has no cause of action against Defendants under § 1981.  (Defs.' Partial Mot. to Dismiss 5.)  Plaintiff does not dispute this argument.

The Sixth Circuit has held that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units[.]'"  Arendale v. City of Memphis, 519 F.3d 587, 598-99 (6th Cir. 2008) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)).  Plaintiff alleges that Defendants are state actors that acted under the color of Ohio law when they allegedly deprived Plaintiff of his constitutional rights.  (Compl. ¶ 42.)  Therefore, § 1983 provides Plaintiff's only avenue of redress for the alleged deprivation by Defendants of his § 1981 right to make and

enforce contracts.  See Arendale, 519 F.3d at 598-99.  Because Plaintiff has no cause of action

under § 1981, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1981 claim.

### C.    Failure to Exhaust Administrative Remedies

Defendants argue that this Court lacks subject matter jurisdiction over four of Plaintiff's

claims, three in part and one in its entirety, because Plaintiff failed to exhaust administrative

remedies.  According to Defendants, Plaintiff's Title VII discrimination and hostile work

environment claims, as well as his Ohio law discrimination claim, are precluded to the extent

that they allege color and national origin discrimination.  Plaintiff's breach of contract claim,

Defendants argue, is precluded in its entirety.  The Court will examine Defendants' failure to

exhaust administrative remedies argument first with respect to Plaintiff's Title VII and Ohio law

discrimination claims and second with respect to his breach of contract claim.

### 1.    Color and National Origin Discrimination Claims

Plaintiff's Title VII discrimination and hostile work environment claims (Counts Five

and Nine), as well as his Ohio law discrimination claim (Count Six), allege that Defendants

discriminated against Plaintiff based on his color and national origin.  (Compl. ¶¶ 44, 47, 56.)

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's discrimination

claims to the extent they allege color and national origin discrimination because Plaintiff failed

to exhaust administrative remedies.  (Defs.' Partial Mot. to Dismiss 5-7.)  According to

Defendants, Plaintiff cannot now allege color and national origin discrimination because neither

of his EEOC/OCRC charges alleged color or national origin discrimination or gave the

Commissions any reason to investigate color or national origin discrimination.  Acknowledging

the fact that he failed to check the color and national origin discrimination boxes in his charges,

Plaintiff responds that the facts alleged in the charges, as well as the documents he attached to the charges, would have prompted the Commissions to investigate color and national origin discrimination. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 5-6.) Furthermore, according to Plaintiff, the Court should construe the charges liberally in his favor because he was unrepresented by counsel when he filed the charges. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 7-8.) Plaintiff argues, therefore, that he has exhausted administrative remedies, and his color and national origin discrimination claims should go forward. The Court agrees with Defendants.

Federal court subject matter jurisdiction over Title VII claims is triggered only after a plaintiff exhausts administrative remedies. Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991). "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." Strouss v. Michigan Dep't of Corrections, 250 F.3d 336, 342 (6th Cir. 2001). An uncharged claim can be reasonably expected to grow out of an EEOC charge when, despite the claimant's failure to explicitly allege the claim, the facts alleged either in the charge or in a document attached to the charge would prompt the EEOC to investigate the uncharged claim. Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (citing Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 380 (6th Cir. 2002)).

In this case, Plaintiff did not explicitly file his color and national origin discrimination claims in either his February 23 or October 7, 2006 charges. See Strouss, 250 F.3d at 342. Plaintiff checked the boxes on both charges for race discrimination and retaliation, but left the boxes for color and national origin discrimination blank. (Defs.' Partial Mot. to Dismiss Exs. 1-

2.)  Moreover, Plaintiff's factual allegations in the bodies of both charges are devoid of any explicit reference to color or national origin discrimination.  (Defs.' Partial Mot. to Dismiss Exs. 1-2.)  Instead, in both charges, Plaintiff alleges that he was discriminated against "due to consideration of my race, Black, and in retaliation for filing a previous charge of discrimination."  (Defs.' Partial Mot. to Dismiss Ex. 1.)  The issue, then, is whether Plaintiff's color and national origin discrimination claims "can be reasonably expected to grow out of" his charges?  See Strouss, 250 F.3d at 342. The answer is no.

A race discrimination claim does not necessarily give rise to color or national origin discrimination claims.  Ang, 932 F.2d at 546 (upholding district court's dismissal of a plaintiff's race discrimination claim when plaintiff's EEOC charge alleged only national origin discrimination); Wakefield v. Children's Hospital, 2008 WL 3833798, *6 (S.D. Ohio Aug. 13, 2008) (finding that the court lacked subject matter jurisdiction over plaintiff's color and national origin discrimination claims under Title VII because plaintiff alleged only race discrimination and retaliation in her EEOC/OCRC charge, allegations that would not have prompted the commissions to investigate color or national origin discrimination).

> Each of these claims is distinct under Title VII.  An individual's national origin is defined as "the country where a person was born, or, more broadly, the country from which his or her ancestors came." Ang, [932] F.2d at 546 (quoting Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 . . . (1973)).  Color discrimination, as one court has stated, "arises when the particular hue of the plaintiff's skin is the cause of the discrimination . . . ." Bryant v. Bell Atlantic Maryland, Inc., 285 F.3d 124, 133 n.5 (4th Cir. 2002).

Wakefield, 2008 WL 3833798 at *6.

In this case, Plaintiff's color and national origin discrimination claims do not reasonably grow out of his race discrimination and retaliation charges.  See Strouss, 250 F.3d at 342.  In

other words, nothing in Plaintiff's two charges, explicit or implicit, would give the Commissions cause to investigate whether Plaintiff also suffered color and national origin discrimination.  See Dixon, 392 F.3d at 217.  The factual allegations in the charges say nothing about where Plaintiff was born or which country his ancestors came from.  See id.  Moreover, Plaintiff's charges are devoid of any allegation that he was treated differently from other black DCSO employees because of the hue of his skin.  Plaintiff instead alleged race discrimination and retaliation for his previous charges of race discrimination.  (Defs.' Partial Mot. to Dismiss Exs. 1-2.)  Nothing in the factual allegations of either of Plaintiff's charges indicates that his color or national origin was also a basis for the discrimination he allegedly suffered in his workplace.

Relying on the Sixth Circuit's decision in Dixon, Plaintiff argues that he supplemented his October 7, 2006 charge with evidence that sufficiently notified the Commissions of his color and national origin discrimination claims.  See 392 F.3d at 217-19.  Plaintiff alleges that an investigation into color and national origin discrimination would reasonably grow out of three emails he allegedly received from a co-worker and attached to his charge.  (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 6.)  The Court agrees with Plaintiff that it can consider, under Dixon, the emails allegedly attached to the charge form to determine whether the Commissions were sufficiently notified of potential color and national origin discrimination claims.  See 392 F.3d at 217-18.  Despite Plaintiff's contention, however, the Court finds that none of the emails would have prompted the Commissions to investigate color or national origin discrimination.  See Dixon, 392 F.3d at 217.

The first two emails Plaintiff allegedly attached to his October 7 charge would give the Commissions no reason to suspect that Plaintiff suffered anything other than race discrimination.

(Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 1.)  The content of the emails, while racially offensive, provides no indication that Plaintiff also suffered discrimination based on his national origin or "the particular hue" of his skin.  See Wakefield, 2008 WL 3833798 at *6.  The third email—which amounts to a disparaging and inappropriate joke about Mexicans—could, in the case of a Mexican-American claimant, lead the Commissions to investigate national origin discrimination.  (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 1.)  But Plaintiff in this case does not allege that he is a Mexican-American.  Therefore, the Court finds that the emails allegedly attached to Plaintiff's charge, like the charge itself, could not reasonably have triggered an investigation by the Commissions into color or national origin discrimination.  See Dixon, 392 F.3d at 217.

Given that nothing in Plaintiff's charges or the attachments to those charges could reasonably cause the Commission to investigate color or national origin discrimination claims, those claims cannot now be saved by the fact that Plaintiff was not represented by counsel at the time of filing.  Plaintiff is correct that the absence of counsel requires this Court to interpret his charges liberally; his color and national origin discrimination claims, for example, are not automatically precluded by his failure to check the appropriate boxes on his two charge forms. See Dixon, 392 F.3d at 217; Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992).  But even in the absence of counsel, Plaintiff was required to allege somewhere in the charge or in an attached document some fact that would give the Commissions reason to suspect and investigate color and national origin discrimination.  See id.  As explained above, Plaintiff's two charges, and the emails attached to his second charge, were devoid of such an allegation.  (See Defs.' Partial Mot. to Dismiss Exs. 1-2; Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 1.)  Therefore,

the Court finds that Plaintiff's color and national origin discrimination claims could not reasonably be expected to grow out of either of his two charges.  See Strouss, 250 F.3d at 342.

With respect to his allegations of color and national origin discrimination, Plaintiff has failed to exhaust administrative remedies.  "This Court is without subject matter jurisdiction to hear an unexhausted Title VII claim."  Wakefield, 2008 WL 3833798 at *7.  Therefore, to the extent they are based on color and national origin discrimination, Plaintiff's Title VII and hostile work environment claims (Counts Five and Nine) are **DISMISSED**.  Because the Ohio Supreme Court has held that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112," Plaintiff's Ohio law discrimination claim (Count Six) is **DISMISSED** to the same extent.  Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981).  Plaintiff's Title VII, hostile work environment, and Ohio law discrimination claims remain to the extent they are based on race discrimination and retaliation.[5]

### 2.    Breach of Contract Claim

In Count Seven, Plaintiff alleges that Defendants breached his "contract of employment" by limiting his special duty assignments, reprimanding and suspending him, and refusing to provide him with a meaningful institutional remedy for the alleged violations of his rights.

---

[5] Defendants also argue that this Court lacks subject matter over Plaintiff's "allegations of harassment as they to pertain to Plaintiff's February 23, 2008 [sic] Charge of Discrimination" because Plaintiff did not allege harassment in his February 23 charge.  (Defs.' Partial Mot. to Dismiss 5, 7.)  Nowhere in the complaint, however, does Plaintiff allege harassment pertaining to his February 23 charge.  Moreover, Plaintiff has clearly exhausted administrative remedies with respect to his hostile work environment claim; the harassment that forms the basis for that claim was sufficiently alleged in his October 7, 2006 charge.  Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiff's harassment allegations.

(Compl. ¶ 49.)  Defendants respond that the grievance procedure in Article Twelve of the

Collective Bargaining Agreement ("CBA") between the Delaware County Sheriff and Plaintiff's

union, the OPBA, divests this Court of subject matter jurisdiction.  (Defs.' Partial Mot. to

Dismiss 9-11.)  According to Defendants, the grievance procedure in Article Twelve of the CBA

is Plaintiff's exclusive remedy, and his failure to exhaust that remedy before filing this suit

precludes his breach of contract claim.  The Court agrees.

As a Deputy Sheriff appointed under OHIO REV. CODE ANN. § 311.04, Plaintiff has no

"contract of employment" with the DCSO.  Plaintiff is, however, a member of the OPBA, and

has rights under the OPBA's CBA with the Delaware County Sheriff.  The CBA provides that

"all matters arising out of this contract are to be processed exclusively through the grievance

procedure" contained in Article Twelve.  (Defs.' Partial Mot. to Dismiss Ex. 3 at 9.)  The

grievance procedure is a four-step process that can be initiated by the employee or the OPBA on

the employee's behalf.  (Defs.' Partial Mot. to Dismiss Ex. 3 at 10.)  The first three steps take the

grievance up the chain of command, and culminate with a decision on the grievance by the

Sheriff.  If the parties are unable to satisfactorily resolve the grievance, the Sheriff's decision

may be appealed by the OPBA to an arbitrator.  The arbitrator's decision is final and binding on

all parties.  Article Twelve permits the OPBA to determine when a grievance will be denied.

"If a collective bargaining agreement between a public employer and an exclusive

employee representative 'provides for a final and binding arbitration of grievances, public

employers, employees, and employee organizations are *subject solely to that grievance*

*procedure . . . .*'"  State ex rel. Wilkinson v. Reed, 99 Ohio St.3d 106, 110, 789 N.E.2d 203, 208

(2003) (quoting OHIO REV. CODE ANN. § 4117.10(A)) (emphasis in original).  "As a general

rule, the grievance procedures of a collective bargaining agreement must be exhausted as a prerequisite to any civil action against the employer." Kelley v. Cairns & Brothers, Inc., 89 Ohio App.3d 598, 607, 626 N.E.2d 986, 991 (Ohio Ct. App. 1993); see also Marusa v. City of Brunswick, 2005 WL 605440, *7 (Ohio Ct. App. March 16, 2005); Ladd v. New York Central R.R. Co., 170 Ohio St. 491, 500, 166 N.E.2d 231, 237 (1960).

In this case, Plaintiff has failed to exhaust the grievance procedure in Article 12 of the CBA. Plaintiff did file a grievance with the OPBA, and apparently followed the grievance procedure until his claim was denied at step three by the Sheriff. (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss Ex. 2.) But as far as the Court can tell, the Sheriff's decision was never appealed to an arbitrator under step four of the grievance procedure. Because his breach of contract claim was never arbitrated, Plaintiff has failed to exhaust the exclusive administrative remedy provided in the CBA. See Kelley, 89 Ohio App.3d at 607, 626 N.E.2d at 991. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's unexhausted breach of contract claim. See id.; Reed, 99 Ohio St.3d at 110, 789 N.E.2d at 208.

Plaintiff alleges that Defendants breached his "contract of employment" by refusing to provide him with a meaningful institutional remedy for the alleged violations of his rights. (Compl. ¶ 49.) Clearly the grievance procedure in the CBA, which Defendants followed until step three, provides Plaintiff with a meaningful institutional remedy for the alleged violations of his rights. But this allegation could be interpreted as a complaint by Plaintiff that he was wrongfully denied the opportunity to arbitrate his breach of contract claim as provided in step four, leaving him powerless to exhaust administrative remedies. The Court envisions two ways this could have occurred. First, Defendants might have refused to arbitrate his claim. Second,

the OPBA could have in bad faith refused to appeal the step three denial of Plaintiff's claim to an arbitrator. Plaintiff does not allege in his complaint that Defendants refused to arbitrate his claims. And even if the OPBA did wrongfully refuse to appeal the Sheriff's denial of Plaintiff's claims to an arbitrator, subject matter jurisdiction in this Court would still be lacking. To exhaust administrative remedies in that situation, Plaintiff would have been required to file an unfair labor practice claim against the OPBA with the Ohio Employment Relations Board for failure to fairly represent. See OHIO REV. CODE ANN. §§ 4117.11(B)(6), 4117.12(A). Therefore, because Plaintiff failed to exhaust his administrative remedies, this Court lacks subject matter jurisdiction over his breach of contract claim. See Reed, 99 Ohio St.3d at 110, 789 N.E.2d at 208; Kelley, 89 Ohio App.3d at 607, 626 N.E.2d at 991. The Court **GRANTS** Defendants' motion to dismiss Plaintiff's breach of contract claim.

D.     **Promissory Estoppel**

Plaintiff alleges in Count Eight that he reasonably relied to his detriment on promises and representations made to him by Defendant DCSO prior to his accepting employment with the Sheriff. (Compl. ¶ 52.) Plaintiff alleges that the DCSO promised that "he would be permitted to work special duty assignments for the hours for which he volunteered, and that he would be considered for promotions and salary increases." (Compl. ¶ 52.) Defendants respond that Plaintiff cannot state a promissory estoppel claim. (Defs.' Reply to Pl.'s Resp. to Partial Mot. to Dismiss 4.) The Court agrees with Defendants.

The doctrine of promissory estoppel is inapplicable against a state or its agencies in the exercise of a governmental function. Hortman v. City of Miamisburg, 110 Ohio St.3d 194, 199, 852 N.E.2d 716, 721 (2006). The DCSO is a state agency. Moreover, the process within the

DCSO of determining promotions, salary increases, and distribution among officers of special

duty assignments is a governmental function.  See Meyers v. McGrath, 2007 WL 1821706, *5

(Ohio Ct. App. June 26, 2007) ("Because the promotional process within a municipal police

department falls within the purview of a governmental function, the doctrines of equitable and

promissory estoppel are inapplicable. . . .").  Therefore, the doctrine of promissory estoppel is

inapplicable against Defendant DCSO.[6]  See Hortman, 110 Ohio St.3d at 199, 852 N.E.2d at 721.

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's promissory estoppel claim.

###        E.        Individual Capacity Claims Under Title VII

Plaintiff sues Defendants Myers, Borchers, Todd, Gannon, Buttler, Dore, Pohl, Vance,

and Spring ("Individual Defendants") in their individual and official capacities.  Defendants

argue that Plaintiff's Title VII discrimination and hostile work environment claims should be

dismissed to the extent they name Defendants in their individual capacities because Title VII

does not permit individual liability.  (Defs.' Partial Mot. to Dismiss 7-8.)  The Court agrees.

"An individual employee/supervisor, who does not otherwise qualify as an 'employer,'

may not be held personally liable under Title VII."  Wathen v. General Electric Co., 115 F.3d

400, 406 (6th Cir. 1997); Ashiegbu v. Purviance, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998)

(finding that plaintiff could not sue defendants in their individual capacities because plaintiff

failed to allege that the individual defendants met Title VII's definition of employer).  Title VII

defines an employer as "a person engaged in an industry affecting commerce who has fifteen or

more employees . . . and any agent of such person."  42 U.S.C. § 2000e.

---

[6] Given this finding, the Court need not address Defendants' alternative argument that the
Court lacks subject matter jurisdiction over Plaintiff's promissory estoppel claim.  (Defs.' Partial
Mot. to Dismiss 10.)

In this case, Plaintiff alleges in his complaint that the Board and the DCSO are employers within the meaning of Title VII.  (Compl. ¶ 4.)  Plaintiff does not allege in his complaint that any of the Individual Defendants fall within Title VII's definition of employer.  See Purviance, 76 F. Supp.2d at 828.  Plaintiff does seem to suggest in his response brief, however, that the Individual Defendants, because they are agents of the Delaware County Sheriff, are employers and can be held liable under Title VII.  (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 8.)  Plaintiff relies on Purviance to support this proposition.  The court in Purviance, however, said no such thing, and Plaintiff's misrepresentation to the Court of the holding in Purviance is inexcusable.

In Purviance, the Sixth Circuit defined the word "agent" in Title VII's definition of employer as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'"  76 F. Supp.2d at 828. But the court never held, as Plaintiff proposes, that an agent of an employer can be held individually liable under Title VII.  Id.  In fact, it is well established that "the inclusion of the word 'agent' in the definition of employer under Title VII does not permit supervisors who would not otherwise meet the definition of employer to be held individually liable under the statute."[7]  Wakefield, 2008 WL 3833798 at *7 (citing Wathen, 115 F.3d at 405-06)).  Therefore, because "Congress did not intend individuals to face liability under the definition of "employer" it selected for Title VII," the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Title VII claims against the Defendants in their individual capacities.  See Wathen, 115 F.3d at 406.

---

[7] "The majority of courts addressing this issue have concluded that '[t]he obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute.'" Wathen, 115 F.3d at 405-06 (quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993)).

**F.     Public Policy Violation in the Ohio Employment Discrimination Claim**

Plaintiff alleges in Count Six that OHIO REV. CODE ANN. § 4112 creates an implied common-law tort claim against the Board and the DCSO for violating Ohio's public policy by discriminating against him on the basis of his race, color, and national origin.  (Compl. ¶ 48.) Defendants respond that no such claim exists in Ohio.  (Defs.' Partial Mot. to Dismiss 8-9.) Plaintiff does not dispute Defendants' contention.

"Ohio law does not 'recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct.'" Wakefield, 2008 WL 3833798 at * 8 (quoting Leininger v. Pioneer Nat'l Latex, 115 Ohio St.3d 311, 317, 875 N.E.2d 36, 42-43 (2007)).  No public policy race discrimination or retaliation claims exist in Ohio because § 4112, with its "full panoply of remedies, including compensatory and punitive damages," adequately protects society's interests.  Id.; see Rice v. CertainTeed Corp., 84 Ohio St.3d 417, 422, 704 N.E.2d 1217, 1221 (1999); Barlowe v. AAAA Int'l Driving Sch., Inc., 2003 WL 22429543, *8 (Ohio Ct. App. Oct. 24, 2003) (finding that § 4112 provides "broad relief which is sufficiently comprehensive to vindicate the policy goals set forth in that statute."); Carrasco v. NOAMTC, Inc., 124 Fed. Appx. 297, 304 (6th Cir. 2004) (affirming the dismissal of plaintiff's retaliation claim in violation of public policy because both Title VII and § 4112 provide adequate remedies to protect society's interests).

In this case, OHIO REV. CODE ANN. § 4112 and Title VII provide adequate remedies for Plaintiff to redress the race discrimination and retaliation he allegedly suffered in his workplace. See Leininger, 115 Ohio St.3d at 317, 875 N.E.2d at 42-43; Wakefield, 2008 WL 3833798 at *8;

Rice, 84 Ohio St.3d at 422, 704 N.E.2d at 1221; Barlowe, 2003 WL 22429543 at *8; Carrasco, 124 Fed. Appx. at 304.  Therefore, under the Ohio Supreme Court's holding in Leininger, Plaintiff cannot state a public policy claim under § 4112.  See 115 Ohio St.3d at 317, 875 N.E.2d at 42-43.  The Court **GRANTS** Defendants' motion to dismiss Plaintiff's public policy claim in Count Six.

### G.     Improper Parties

Defendants move to dismiss the Board and the DCSO as improper parties, and argue that Plaintiff's claims against Defendants Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities should be dismissed as redundant.  The Court will examine Defendants' arguments with respect to each Defendant to determine whether the Board and the DCSO are proper parties.  The Court will then address Defendants' redundancy argument.

### 1.     The Delaware County Board of Commissioners

Plaintiff joins the Board as a Defendant in this case, alleging that it is Plaintiff's employer for the purposes of Title VII and OHIO REV. CODE ANN.§ 4112.  (Compl. ¶ 4.) Defendants argue that the Board is an improper party, and should be dismissed, because the Board is not Plaintiff's employer, and "had no involvement in or authority over the matters giving rise to this complaint."  (Defs.' Partial Mot. to Dismiss 11-12.)  According to Defendants, "Plaintiff apparently has the mistaken belief that the Board of Commissioners employs, or is otherwise responsible for the employment of employees in the Sheriff's Office."  (Defs.' Partial Mot. to Dismiss 11.)  Plaintiff does not oppose Defendants' motion to dismiss the Board.

The Delaware County Sheriff, not the Board, is Plaintiff's employer.  See OHIO REV. CODE ANN.§ 311.04(B)(1).  The Sheriff has exclusive control over his employees, including the

power to hire and fire deputy sheriffs.  See id.  Moreover, nowhere in the complaint does

Plaintiff allege that the Board played any part in the alleged discrimination and retaliation that

gives rise to the complaint.  The fact that Plaintiff does not oppose the dismissal of the Board as

a Defendant in this case indicates agreement with Defendants that the Board is an improper

party.  (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 1-2.)  Therefore, the Court **GRANTS**

Defendants' motion to dismiss the Board.

### 2.     The Delaware County Sheriff's Office

Plaintiff joins the DCSO as a Defendant in this suit.  (Compl. ¶ 4.)  Defendants respond

that the DCSO should be dismissed because it is not a legal entity subject to suit.  (Defs.' Partial

Mot. to Dismiss 12-13.)  Plaintiff does not dispute this contention.

Under Ohio law, "a county sheriff's office is not a legal entity that is capable of being

sued."[8]  Barrett v. Wallace, 107 F. Supp.2d 949, 954-55 (S.D. Ohio 2000) (citing Batchik v.

Summit County Sheriff's Office, 1989 WL 26084, *1 (Ohio Ct. App. March 15, 1989)).

Liability can be imposed on the governmental entity that the sheriff represents by suing the

sheriff in his official capacity.  Alkire v. Irving, 330 F.3d 802, 811 (6th Cir. 2003) ("individuals

sued in their official capacities stand in the shoes of the entity they represent.").

In this case, because the DCSO is not a legal entity capable of being sued, Plaintiff

cannot join the DCSO as a Defendant.  See Barrett, 107 F. Supp.2d at 954-55.  But as

Defendants point out, Plaintiff's claims against Sheriffs Myers and Davis in their official

capacities are sufficient to state a claim against the governmental entity—Delaware

---

[8] The capacity of a sheriff's office to sue or be sued is determined by the law of the state in which the district court sits.  FED. R. CIV. P. 17(b)(3).

25

County—that the Sheriffs represent. See (Defs.' Partial Mot. to Dismiss 13); Alkire, 330 F.3d at 811. The Court therefore **GRANTS** Defendants' motion to dismiss the DCSO as a party Defendant in this action.

### 3. Individual Defendants Named in Their Official Capacities

Plaintiff sues Defendants Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities. Defendants argue that the claims against these current and former employees in their official capacities should be dismissed as redundant. (Defs.' Partial Mot. to Dismiss 13.) The Court disagrees.

Under 42 U.S.C. § 1983 and Title VII, a public official can be sued in his or her official capacity. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (§ 1983); Johnson v. University of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000) (Title VII). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978)). Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit. See Von Herbert v. City of St. Clair Shores, 61 Fed. Appx. 133, 140 n.4 (6th Cir.2003); Pethtel v. Washington County Sheriff's Office, 2007 WL 2359765, *5 (S.D. Ohio Aug. 16, 2007); Gray v. City of Cincinnati, 2006 WL 2193187, *8 (S.D. Ohio Aug. 1, 2006).

In this case, Plaintiff is permitted under § 1983 and Title VII to sue Defendants Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities; they are public officials. See Graham, 473 U.S. at 165-66; Johnson, 215 F.3d at 571. Furthermore, unlike in

Von Herbert, Pethtel, and Gray, the principal entity of which the Individual Defendants are agents—Delaware County—is not a named Defendant in this case. See 61 Fed. Appx. at 135 (naming the City of St. Clair Shores as a defendant); 2007 WL 2359765 at *5 (naming Washington County as a defendant); 2006 WL 2193187 at *1 (naming the City of Cincinnati as a defendant). Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claims against Defendants Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities.

### H.     Insufficient Service of Process

Plaintiff names Lt. Kevin Savage as a Defendant in his complaint. (Compl. ¶ 10.) Defendants move to dismiss Defendant Savage for insufficient service of process under Rule 12(b)(5). In considering a motion to dismiss under Rule 12(b)(5), "this Court must accept as true all well pleaded allegations of the complaint . . . although reference to the record is permissible to determine the alleged insufficiency of service of process." Thompson v. Kerr, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982) (citing Amersbach v. City of Cleveland, 598 F.2d 1033, 1034-35 (6th Cir. 1979)). Sufficient service requires a plaintiff to serve an individual with a summons and copy of the complaint, unless the individual executes a waiver of service. FED. R. CIV. P. 4(c)-(d).

The record shows that Defendant Savage was not identified in the caption of the complaint, and that he was never served with a summons or copy of the complaint. See FED. R. CIV. P. 4(c). The record also shows that Defendant Savage did not execute a waiver of service as

did the other Defendants in this case.[9]  Moreover, Plaintiff does not dispute that Defendant Savage was never properly served under Rule 4(c).  Therefore, the Court **GRANTS** Defendants' Rule 12(b)(5) motion to dismiss Defendant Savage for insufficient service of process under Rule 4(c)(1).

## IV.    Conclusion

For the reasons stated above, the Court **GRANTS IN PART** Defendants' partial motion to dismiss under Rules 12(b)(1) and 12(b)(6).  (Doc. # 19).  The Court **GRANTS** Defendants': (1) Rule 12(b)(1) motion to dismiss Plaintiff's 42 U.S.C. § 1983 (Count One) and 1985 (Count Two) claims in part, and his § 1986 claim (Count Three) in its entirety, as barred by statute of limitations; (2) Rule 12(b)(6) motion to dismiss Plaintiff's 42 U.S.C. § 1981 claim; (3) Rule 12(b)(1) motion to dismiss Plaintiff's Title VII discrimination and hostile work environment claims (Counts Five and Nine), as well as his Ohio law discrimination claim (Count Six), to the extent those claims allege color and national origin discrimination, for failure to exhaust administrative remedies; (4) Rule 12(b)(1) motion to dismiss Plaintiff's breach of contract claim (Count Seven) for failure to exhaust administrative remedies; (5) Rule 12(b)(6) motion to dismiss Plaintiff's promissory estoppel claim (Count Eight) for failure to state a claim upon which relief can be granted; (6) Rule 12(b)(6) motion to dismiss Plaintiff's Title VII claims (Counts Five and Nine) against the Individual Defendants in their individual capacities; (7) Rule 12(b)(6) motion to dismiss Plaintiff's public policy claim imbedded in Count Six; (8) motion to dismiss the Board and the DCSO as improper parties; and (9) Rule 12(b)(5) motion to dismiss

_____

[9] Defendants also attach an affidavit to their motion to dismiss in which Defendant Savage swears that he was never served with a summons or copy of the complaint and never executed a waiver of service.  (Defs.' Partial Mot. to Dismiss Ex. 4.)

Defendant Savage for insufficient service of process. The Court **DENIES** Defendants' motion to dismiss Plaintiff's claims against Defendants Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities. The following claims remain:

(1) Plaintiff's 42 U.S.C. § 1983 and 1985 claims against Defendants Myers, Borchers, Todd, Gannon, Buttler, Dore, Pohl, Vance, and Spring in their individual and official capacities, and Defendant Davis in his official capacity, with respect only to the events that gave rise to Plaintiff's October 7, 2006 EEOC/OCRC charge;

(2) Plaintiff's Title VII race discrimination and retaliation claims against Defendants Myers, Davis, Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities;

(3) Plaintiff's Ohio law (OHIO REV. CODE ANN. § 4112) race discrimination and retaliation claims against Defendants Myers, Borchers, Todd, Gannon, Buttler, Dore, Pohl, Vance, and Spring in their individual and official capacities, and Defendant Davis in his official capacity;[10] and,

(4) Plaintiff's Title VII hostile work environment claim based on race discrimination and retaliation against Defendants Myers, Davis, Borchers, Todd, Gannon, Buttler, Dore, Pohl, and Vance in their official capacities.

**IT IS SO ORDERED**.

---

[10] Defendants did not move to dismiss Plaintiff's Ohio law discrimination claim against the Individual Defendants in their individual capacities.

Date: March 3, 2009

**/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court